SPS

COMMONWEALTH OF VIRGINIA
CIRCUIT COURT OF FAIRFAX COUNTY
4110 CHAIN BRIDGE ROAD
FAIRFAX, VIRGINIA 22030
703-691-7320
(Press 3, Press 1)

Curtis Cox vs. Snap Inc

CL-2015-0015767

TO:  Snap Inc
 Serve Navneet Gupta CEO
 4080 Lafayette Center Drive Suite 340
 Chantilly VA 20151

### SUMMONS – CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.

Done in the name of the Commonwealth of Virginia, on December 3, 2015.

JOHN T. FREY, CLERK
By: _____
Deputy Clerk

Plaintiff's Attorney: Nicholas M DePalma

**EXHIBIT A**

**VIRGINIA:**

IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

FILED
CIVIL INTAKE
2015 NOV 25 AM 11: 37
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

CURTIS COX

    Plaintiff,

v.

SNAP, INC.,
4080 Lafayette Center Drive, Suite 340
Chantilly, Virginia 20151
SERVE:  Navneet Gupta, CEO
           4080 LaFayette Center Drive, Suite 340
           Chantilly, Virginia 20151

    Defendant.

JURY TRIAL DEMANDED

Case No.

2015  15767

## COMPLAINT

COMES NOW Plaintiff, Curtis Cox, and brings this Complaint against Defendant SNAP, Inc. ("Snap"), alleging the following based upon personal knowledge and upon information and belief.

### NATURE OF THE CASE

1.    This is a case for breach of contract arising out of a letter agreement in which Snap granted Mr. Cox valuable stock options in exchange for assistance that Mr. Cox and $C^2$ Technologies, Inc. ("$C^2$") were to provide to Snap to help grow its business. Mr. Cox kept his end of the bargain, but when Mr. Cox exercised his right to require Snap to purchase his stock options, Snap violated the letter agreement and refused to pay.

### PARTIES

2.    Mr. Cox is an individual residing in the State of Maryland.

3. Snap is a Virginia corporation, having a principal place of business at 4080 Lafayette Center Drive, Suite 340 Chantilly, VA 20151.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to Va. Code Ann. § 8.01-328.1, as Defendant transacted business in Virginia and Defendant caused injury to Mr. Cox in Virginia.

5. Venue in this Court is proper pursuant to Va. Code Ann. § 8.01-262 because there exists a substantial nexus to this forum as Snap regularly conducts substantial business activity in Fairfax County, Virginia, and Defendant's acts and omissions giving rise to this action occurred within this County.

## FACTUAL ALLEGATIONS

**Stock Option Agreement**

6. Mr. Cox is a well-known and respected figure in the government contracting community. Mr. Cox is the President of $C^2$, a successful government contractor with more than 125 awards for excellence. Mr. Cox has been recognized by The Washington Post for his entrepreneurial skills, and has been featured in news articles and on several television networks, including ABC and NBC.

7. Snap, on the other hand, at least as of January 12, 2006, was a small business looking to grow in the government contracting community. Snap requested Mr. Cox's help to promote and market Snap in exchange for obtaining an equity stake in Snap. In exchange, Snap offered Mr. Cox stock options.

8. Snap and Mr. Cox entered into a Letter Agreement on January 12, 2006 memorializing this understanding ("Letter Agreement").

9. A true and correct copy of the Letter Agreement is attached as **Exhibit 1**.

10. In the Letter Agreement, Snap granted Mr. Cox "a non-qualified stock option" granting him "the right to purchase 308 shares, representing five (5%) percent of the total authorized shares of stock of Snap." Snap agreed that Mr. Cox's shares would "increase proportionally" with any stock split. Letter Agreement § 1.

11. Snap gave Mr. Cox the right to "require the Company to purchase his options at any time" after January 1, 2011. Letter Agreement § 10.

12. The parties agreed that the price would be "determined based on the excess of the then fair market value of Snap, which such value determined based on a .8 times Snap's annual sales during the most recently preceding twelve-month period, in excess of the initial strike price." Letter Agreement § 10(b).

13. The strike price was set at .8 times Snap's sales in 2005, estimated to be approximately $12,000,000. Letter Agreement § 2.

14. The parties agreed that the repurchase amount for the stock options would be payable by Snap to Mr. Cox over a five-year period with interest at the then current prime rate.

15. Snap granted Mr. Cox the stock options because Snap wanted to incentivize Mr. Cox to promote Snap and help Snap grow its business.

16. Navneet Gupta was the President of Snap when the Letter Agreement was executed by the parties.

17. Navneet Gupta executed the Letter Agreement on behalf of Snap.

18. Mr. Cox executed the Letter Agreement on behalf of himself.

19. The Letter Agreement is a binding agreement between the parties.

**Mr. Cox Exercises the Right to Require Snap to Purchase the Stock Options**

20. Mr. Cox exercised his right to require Snap to purchase the stock options under Section 10 of the Letter Agreement on March 18, 2011.

21. A true and correct copy of a letter that Mr. Cox sent to Mr. Gupta dated March 18, 2011 ("March Letter") is attached as **Exhibit 2**.

22. Mr. Cox sent the March Letter to Mr. Gupta on March 18, 2011.

23. Mr. Gupta received the March Letter on or shortly after March 18, 2011.

24. In the March Letter, Mr. Cox wrote: "By this letter, I hereby exercise my right under section 10 of the Agreement to require SNAP to purchase all of my Options."

25. Mr. Cox attached a copy of the Letter Agreement to the March Letter.

**Snap Refuses to Pay**

26. After receiving the March Letter, Mr. Gupta emailed Mr. Cox on March 28, 2011.

27. Mr. Gupta acknowledged receiving Mr. Cox's "recent FedEx package" and offered to "negotiate a resolution of your option claims."

28. The parties were unable to negotiate a resolution of Mr. Cox's option claims.

29. Mr. Gupta never provided Mr. Cox with financial information by which Mr. Cox could calculate the value of his stock options.

30. Mr. Cox waited several years and raised the issue of his stock options again in October 2015.

31. Mr. Gupta responded to Mr. Cox on October 9, 2015 and claimed that "Snap owes you nothing."

32. Mr. Gupta's response is incorrect—Snap owes Mr. Cox the purchase price

4

for the stock options contained in the Letter Agreement as exercised in the March Letter.

## COUNT I
### (Breach of Contract)

33. Mr. Cox incorporates herein all factual allegations made in Paragraphs 1-32 above.

34. Mr. Cox and Snap entered into a valid and enforceable Letter Agreement.

35. The Letter Agreement gave Mr. Cox stock options in Snap and the right to require Snap to purchase the stock options after January 1, 2011.

36. Mr. Cox executed the right to require Snap to purchase the stock options by sending the March Letter.

37. Snap breached the Letter Agreement by refusing to pay Mr. Cox the value of his stock options over a 5 year period from the date Mr. Cox exercised his right to require Snap to purchase them.

38. In the alternative, Snap anticipatorily repudiated (and therefore breached) the Letter Agreement by refusing to pay Mr. Cox and then writing on October 9, 2015 that "Snap owes you nothing."

39. Mr. Cox has been damaged due to Snap's breach of the Letter Agreement in the amount due for the purchase of his stock options.

40. Mr. Cox cannot ascertain the precise amount of damages because Snap never provided the revenue information necessary to calculate the value of the stock options. However, Mr. Cox believes that the value of the options is approximately $1,000,000 before interest calculations.

41. By reason of the foregoing breach of contract, SNAP is liable to Mr. Cox in an amount to be determined at trial, but currently estimated to be $1,000,000 plus interest.

5

## JURY DEMAND

Plaintiff requests a jury trial on the issues present in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Curtis Cox demands judgment in his favor against SNAP:

A. Granting him compensatory damages in an amount of $1,000,000 plus pre and post judgment interest;

B. Awarding him costs and expenses; and

C. Granting such other and further relief as the Court deems just and proper.

Dated: November 25, 2015                    Respectfully submitted,

VENABLE LLP

Randall K. Miller
VSB No. 70672
Nicholas M. DePalma
VSB No. 72886
Taylor S. Chapman
VSB No. 81968
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com

*Counsel for Plaintiff*

6